## C. E. Williams v. The State.

### No. 4498.   Decided May 30, 1917.

**1.—Murder—Evidence—Bill of Exceptions.**

Where the bill of exceptions failed to allege the relation of the excluded testimony to the issues in the case, and its probable effect thereon, the same could not be considered on appeal.

**2.—Argument of Counsel—Practice on Appeal.**

Where, upon trial of. murder, the State's counsel in his argument indulged in legitimate inferences .and deductions from the facts in the case, there was no reversible error.

**3.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the jury was warranted in finding defendant guilty of said offense under the facts of the case, and a charge of the court more favorable than the law required, there was no reversible error, and the conviction is sustained.

Appeal from the District Court of Wichita.   Tried below before the Hon. Wm. N. Bonner.

Appeal from a conviction of murder; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*S. Heyser*, for appellant.—On question of admission of evidence: Faulkner v. State, 65 S. W. Rep., 1093.

On question of argument of counsel: Fredericson v. State, 70 S. W. Rep., 754; Patterson v. State, 60 S. W. Rep., 557.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder, his punishment being assessed at thirty years confinement in the penitentiary.

There are nine bills of exception in the record.   All of these bills seem to have been reserved to remarks of the prosecuting officer with reference to the case in addressing the jury except the ninth.   It recites that Mrs. T. C. Hollander testified in the cause to the following facts:   "I have twelve children; my oldest is 29 years of age, Martha is 17 years of age, John is 13 years of age, Clarence is 11 years of age; have a married daughter 24 years of age, and am the mother of the other small children in the courtroom."   To which testimony the defendant, through his attorney, objected because it was irrelevant, immaterial, incompetent and highly prejudicial.   These objections were overruled, and the testimony went to the jury.   The defendant then asked the court to instruct the jury not to consider the testimony   This was overruled.   This is all that there is in this bill.   It is very indefinite; it does not undertake to show anything except the bare fact that the witness made the statements before the jury.   The court makes no qualification but signs the bill as presented.   In order for this court

to pass upon the question of alleged error in the admission or rejection of testimony, there must be a sufficient statement in the bill to show the relation of the testimony either rejected or admitted, as the case may be, to the case and its probable effect. If excepted to by the defendant, why, it was error; if offered by him and excluded, the purpose and object for its introduction. Tested under these rules we think this bill of exceptions is inadequate.

The other eight bills of exception refer to the remarks of the prosecuting officer. The first one recites that the district attorney stated to the jury that "it was Williams' lecherous desire to ruin the girl Martha," to which language of the district attorney the defendant, through his attorney, excepted for the reason that such argument and language used was without support in the evidence, was irrelevant and immaterial to the main issue in the case, and was highly inflammatory and prejudicial, and was calculated to inflame the minds of the jury and cause them to lose sight of the real issue in the case.

Another bill recites that Nappier, special prosecutor, stated to the jury in his argument, "That it would be a menace to Hollander's elder son to turn Williams loose; that it would be a rebuke to the little towsy headed children now sleeping· in the courtroom and to hear them say, mamma, mamma." This language should not be indulged; but we are not prepared to say, in the face of this record, that such was of sufficient importance to require a reversal. There is some evidence in the record to the effect that there might be trouble between the elder son of deceased and the defendant. The language was a little sharp used by young Hollander to the effect he desired to have an opportunity to kill the son-of-a-bitch, speaking of defendant. There is another reason that might justify Nappier in making some of the statements, and this was with reference to the fact that the trouble seemed to have come up between deceased, Hollander, and defendant by reason of the fact that Williams was undertaking to pay attention to Martha Hollander, a girl about seventeen years of age, and looking to this end defendant had sent his wife away and sued her for divorce. This was very objectionable to deceased, Hollander, and his family, and the language shown to have been uttered by young Hollander was occasioned by these matters at the time appellant killed deceased. Anyway, the language used was not of sufficient gravity to require a reversal of the judgment.

The same prosecuting counsel, Nappier, stated to the jury also, "that it was Williams' intention to debauch this girl; to debauch when he sought company of a little school girl, like Martha." This is an inference by counsel in his argument, and we are inclined to think it is not an illegitimate deduction from the facts. There is evidence which seems to be to a large extent one of the controlling issues in it that defendant was seeking, over the protest of the Hollander family, at least the father, to force himself upon this girl and upon the family. The testimony is rather convincing along that line from one viewpoint, and led to the tragedy. It is unnecessary to detail this testimony.

The same may be said of the remarks of private prosecutor Nappier as contained in four other bills of exception.

Mr. Humphrey, the district attorney, made some remarks, which are as follows: "Gentlemen of the jury: You must convict this defendant, C. E. Williams, not because he is only a murderer of the old man, Hollander, for he is more than a murderer. He is more than an enemy to society in that he has taken the life of one of its members. He is an enemy to the fireside in that he has taken the father of a home; he is an enemy to his married vows in that he sent his wife away and deserted her, the wife he had sworn to protect and love, and who had borne him a child, enduring the travail of childbirth in order to perpetuate his cowardly name. He is an enemy to virtue in that he was seeking to snare with his lecherous designs Martha Hollander, a seventeen-year-old girl, in order to gratify his passion and lust." We are of opinion that the district attorney had some warrant for this speech. If the State's view of the case is right appellant was not justified in any manner in killing the deceased. The evidence shows the deceased was walking very rapidly off, in fact, running from him when he shot him in the back. With reference to the statement that he was an enemy to his married vows in that he sent his wife away and deserted her, the wife he had sworn to protect and love, and who had borne him a child, enduring the travail of childbirth in order to perpetuate his cowardly name, it is justified perhaps so far as real deductions are concerned, for defendant himself testified that he had sent his wife away, and had immediately sued her for divorce; that they had one child. It is but natural to suppose that if she had borne him a child she underwent the travail of childbirth. He is also justified in the conclusion that appellant sought assiduously to pay his attentions to the girl, Martha Hollander, and that she was seventeen years of age. The facts might be reproduced, but it is not necessary.

We are of opinion that the evidence is sufficient to justify the jury's verdict. They could have found a less punishment, but they did not see proper so to do. The facts show that there had been trouble between defendant and deceased, Hollander, about the girl. He had her picture and had induced her to have it taken and refused to give it up. It was demanded of him not only by herself but by her father. He refused. The matter became a little troublesome, and Williams supposedly sent his wife away and sued her for divorce in order that he might be freed from her. There are expressions of his in addition to his acts which showed that he had designs upon the girl either to marry or debauch her. His attention to and acts toward the girl were objected to not only by her family but by the girl herself. Some trouble occurred between deceased and appellant thirty or forty minutes before the homicide. It is claimed by appellant in that trouble, and he supports it with his testimony, that the language about the picture became acute, and that deceased slapped him; that he immediately went away to some other point in the City of Wichita Falls, secured his shotgun and came by a store to buy

shells. The store at .which he applied not having suitable size, he went to a hardware store and bought some shells, and immediately proceeded to where deceased was, and as deceased ran into the store shot him in the back and killed him. There were no exceptions taken to the charge as required by the statute. The jury was warranted in their finding on the facts. A charge on manslaughter was given as well as one on self-defense. The self-defense theory was fully liberal to the defendant. It may be seriously questioned whether he was entitled to it from any viewpoint, even from his own testimony. But no such question is raised, and, therefore, not discussed.

We are of opinion there is nothing of sufficient importance shown in this record to require a reversal, and it is, therefore, affirmed.

*Affirmed.*